## W. L. TENNYSON v. STATE.

No. A-9721.   Oct. 31, 1940.
(106 P. 2d 1114.)

416

Glenn O. Young, of Sapulpa, for defendant.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen and Fred Hansen, Asst. Attys. Gen., and L. J. York, Co. Atty., of Stillwater, for the State.

BAREFOOT, J. Defendant was charged in the county court of Payne county with the crime of violating an order of the State Barber Board providing minimum price schedule for barber work in the city of Stillwater. He was tried, convicted, and sentenced to pay a fine of $25 and costs, and has appealed.

For reversal of this case, it is contended that section 12, article 2, chapter 24, of the 1937 Session Laws, 59 Okla. St. Ann. § 91 et seq., is in contravention of the terms of the Constitution of the United States and State of Oklahoma, the exact provisions of which it is unnecessary to mention in this opinion. The contention of this defendant has been heretofore denied by this court in the case of Ex parte Herrin, reported in 67 Okla. Cr. 104, 93 P. 2d 21. The Supreme Court of this state has also heretofore upheld the constitutionality of this act in the case of Herrin et al. v. Arnold, District Judge, 183 Okla. 392, 82 P. 2d 977, 119 A. L. R. 1471, and in the case of Vandervort et al. v. Keen, District Judge, 184 Okla. 121, 85 P. 2d 405.

It is unnecessary to quote from these opinions. They may be read by those who desire to do so, as they fully discuss the constitutionality of the act above referred to. Defendant in his brief, after citing these cases, says: "* * * wherein the enactment herein involved has been upheld as generally constitutional, the same propositions

therein presented will not be reargued." It is then contended by defendant that certain propositions here raised were not decided in the decisions above quoted. In his original brief he refers to and quotes from the case of Herrin v. Arnold, District Judge, but does not refer to the case of Ex parte Herrin, supra, decided by this court. We believe that a careful reading of the Herrin Case would reveal that a number of the errors assigned have been disposed of by the decision in that case. The errors complained of will be considered in their order.

It is first contended that the order under which defendant was convicted is in violation of article 5, section 32, of the Constitution of the state, Okla. St. Ann., prohibiting the passage of special or local laws until notice shall have first been published in the city or county affected by such law, and of article 5, section 59, forbidding passage of local laws where general laws may be made applicable.

With reference to the last part of this contention, it is evident that the Herrin Case, supra, was not considered, because in that case this exact question was decided against the contention here made. Defendant does not cite any decisions supporting his contention. We call attention to the fact that the order here violated is not a law enacted by the Board of Barber Examiners, but merely a subordinate rule promulgated by them, under a policy laid down and a standard prescribed by the Legislature. There is no authority that an order such as here involved is a special or local law as contemplated by the terms of article 5, section 32, of the State Constitution. It was so decided in the Herrin Case.

It is next contended that the State Barber Board made no effort to comply with the provisions of House

Bill 610 in the passage of the order of October 6, 1938. Hence, the act which defendant, Tennyson, committed was never made a crime by the Legislature or conformable to any legislative authority.

To support this proposition, defendant cites that part of section 4, article 2, chapter 24, Oklahoma Session Laws of 1937, 59 Okla. St. Ann., § 94, which reads as follows: "* * * that nothing contained in this act shall be construed to abrogate or affect the status, force or operation of any provisions of the public health laws; State sanitary laws or the Oklahoma barber law, or any local health ordinance or regulation."

In construing this section, it is contended that the board is prohibited from exercising police power, and that therefore the act was not enacted in the interest of the public health. This expression, to our mind, only showed an intention of the Legislature to enact a law that should not abrogate or supersede the operation of other public health laws. State v. Pyle, 62 Okla. Cr. 411, 71 P. 2d 997.

It is next contended that the proceedings whereby defendant was prosecuted were not in accordance with provisions of House Bill 610, in the following particulars:

"A. To investigate before enactment of the order complained of.

"B. To give 20 days notice of its meeting as required by Title 59, sec. 67, Okla. St. Ann., which was expressly continued in effect by House Bill 610.

"C. To serve a written certified copy of the rule upon the defendant as expressly required by Title 59, Okla. St. Ann., sec. 98 of the Act."

Section 12, article 2, chapter 24, of the Act of the Legislature 1937, 59 Okla. St. Ann. § 102, provides:

"(a) The board shall have the power to approve price agreements establishing minimum prices for barber work,

signed, and submitted by any organized groups of at least seventy-five per centum (75%) of the duly licensed, registered and practicing barbers of any city or town of one thousand (1,000) population or more according to the last Federal Decennial Census, after ascertaining by such investigations, and proofs as the condition permits and requires, that such price agreement is just, and under varying conditions, will best protect the public health and safety by affording a sufficient minimum price for barber work to enable the barbers to furnish modern and healthful service and appliances, so as to minimize the danger to the public health incident to such work.

"The board shall take into consideration all conditions affecting the barber profession in its relation to the public health and safety.

"In determining reasonable minimum prices, the board shall take into consideration the necessary costs incurred in the particular city or town affected by this Act in maintaining a barber shop in a clean, healthful and sanitary condition.

"(b) The board, after making such investigation, shall fix, by official order, the minimum price for all work usually performed in a barber shop.

"(c) That if the board, after investigation made either upon its own initiative or upon the complaint of a representative group of barbers, determines that the minimum prices so fixed are insufficient to properly provide healthful services to the public and keep the shops sanitary, then the board from time to time shall have authority to vary or refix the minimum prices for a barber's work in each city or town affected by this act."

This is the only section of the act which deals with the investigation to be made by the board in fixing minimum prices for barber work in a city or town of this state.

In the Herrin Case, supra [93 P. 2d 28], we said in quoting from American Jurisprudence, volume 7, page 614, as follows:

"What regulations shall be made are largely questions for the legislative body to determine; and unless those made are unreasonable and extravagant in their nature and purpose, or arbitrarily interfere with or destroy the property or personal rights of citizens, they will be sustained by the courts, even though they may be unwise, inexpedient, or place a needless restriction upon those who desire to learn the barber's trade. The Legislature cannot, however, under guise of its police power, impose upon barbershops and beauty parlors unreasonable, capricious, or arbitrary regulations having no relation to the public health or welfare or, under guise of regulation, destroy that profession."

In the case of Herrin v. Arnold, supra [183 Okla. 392, 82 P. 2d 982, 119 A. L. R. 1471], the Supreme Court of this state said:

"It must be conceded that, if the section does confer such power on an unnamed, unofficial group, it is within the inhibition of the Constitution. It is also apparent that the act would be invalid if the agreement referred to were approved without investigation, or even if the agreement were considered as the sole evidence of the facts which the board is authorized to find, since no agreements of individuals could make facts exist which do not exist, so far as others and the public are concerned. Those agreeing could bind neither those not agreeing nor the patrons of the shops. It does not appear from the pleadings here what investigation if any was made, nor do we attempt here to determine the fact as to whether the prices fixed by the board are such as 'will best protect the public health and safety.'

"The board does not have arbitrary power; the courts can still inquire into the question of whether its decisions are unreasonable, extravagant or arbitrary. If here the board has, without more, merely approved an agreement it has not acted according to law. We do not, however, so understand the pleadings. Presumably it has taken into consideration all conditions affecting the barber profession in its relation to the public health and safety, and has

taken into consideration the necessary costs in the particular city or town affected in maintaining a barber shop in a clean, healthful and sanitary condition, and has, after such investigation, made its official order fixing the minimum price for all work usually performed in a barber shop. It is this order which fixes the scale and it is immaterial whether a price agreement has or has not been made.

"It will be noted that the law does not provide that the approval of a price agreement is equivalent to an order of the board. In view of the whole statute it must be construed to mean that the board may, if proof and investigation are sufficient, designate the prices in the agreement or any of them as the minimum prices, but its finding must be based upon all the facts and not upon the mere agreement. The Legislature evidently intended, this to be so in order to avoid a possible unconstitutionality."

It will be noted from the above statements that neither of the courts passed directly upon the question as to what investigation should be made by the Barber Board before entry of an order establishing minimum prices for barber work within the towns or cities prescribed by the act. By the terms of the act, it may well be observed that it seemed to be the intention of the Legislature to give the board a wide discretion as to the extent and nature of its investigation. It may be presumed that the Legislature took into consideration the number of towns and cities that came within the designated classification and the expense necessary for an investigation in each particular case, and for this reason, the clause, "as the condition permits and requires," was placed therein. It may be further presumed that they took into consideration the fact that when investigations were made the members of the board would acquire knowledge by reason of those investigations, which would be beneficial in other cases coming before the

board. We can hardly believe, as contended by defendant, that it was the intention of the Legislature that the board should give notice and have a public hearing in every instance where it was attempted to make an order fixing the minimum price of barber work in that locality, and that if such investigation and notice and public hearing was not had, that it would render the order void and the act unconstitutional by reason thereof. Neither do we believe that the board can invoke unreasonable, capricious, or arbitrary regulations against either the barbers or the public, that have no relation to the public health and welfare, under the guise of regulation of unjustifiable or unreasonable prices. If this should be attempted by the board, any aggrieved party would have the right to such redress as the law affords, but the burden would be upon them to establish this fact. To our mind this question could then be presented to a court of equity, where evidence could be presented which gave all of the facts, and an intelligent decision be rendered thereon.

We do not think that by reason of evidence brought out on cross-examination to show that members of the board were not in Stillwater, and that no examination was held there after notice given, it is sufficient for this court to hold that the order made by the board on October 6, 1938, fixing the minimum prices for barber work on Stillwater is void, and that defendant could not be charged for a violation thereof, and that for this reason the terms of the act above stated were rendered unconstitutional and void.

In the case at bar the record reveals that the order fixing the minimum prices for hair cuts and shaves in Stillwater, which defendant was charged with violating, were fixed after the board had received a petition from 75 per cent of the duly licensed, registered, and practicing

barbers of that city requesting the investigation and order; that subsequent to that time, at least 10 or 15 barbers from Stillwater appeared before the board. The record does not reveal what other investigations were made, if any, by the board, nor is there evidence in the record to show that the order was unreasonable, capricious, or arbitrary. Under these facts it cannot be presumed as a matter of law that the act of the board was unwarranted or that a proper investigation was not made prior to the making of the order of October 6, 1938, herein complained of.

With reference to section B, above noted, this section is based upon section 4331, Oklahoma Statutes 1931, 59 Okla. St. Ann. § 67, which provides:

"Said board shall hold regular meetings every three (3) months in the Capitol of this state, for the consideration of applications for certificates as registered barber or registered apprentice and may transact such other business as may properly come before it, and shall have the power to adjourn from time to time, until its business is completed. Notice of the regular meeting of the board shall be given twenty (20) days previous to the meeting of said board, by publication in at least one daily paper in each congressional district. Said board shall procure a seal for its use and all certificates issued by the board shall bear the imprint of said official seal."

This section is a part of the original Barber Law of Oklahoma, enacted in 1931. It was enacted long before the act of 1937, and has no bearing upon investigations by the Barber Board as provided by section 12 of the Act of 1937, 59 Okla. St. Ann. § 102. The 20 days referred to therein only relates to the four regular quarterly meetings of the Barber Board, at which applications for certificates as registered barbers or apprentice barbers are considered. It was not intended by this section, in our opinion, that investigations could only be made by the board at such regular meeting.

With reference to paragraph C, that defendant was not served with a written certified copy of the rule, defendant has reference to section 8 of the act of 1937, 59 Okla. St. Ann. § 98, which reads as follows:

"That a violation of any provision of this act or of any rule, when a written certified copy of said rule has been served upon the person violating said rule, subpoena or order of the board lawfully made pursuant hereto, except as otherwise expressly provided by this act, shall be a misdemeanor punishable by a fine not less than twenty-five ($25.00) dollars and not exceeding three hundred ($300.00) dollars, or by imprisonment not exceeding six (6) months, or both."

From reading and construing the whole act it does not occur to us that the above section should have the application as contended by defendant. In this connection we call attention to section 5 of the 1937 Act, 59 Okla. St. Ann. § 95, which in part provides:

"Every rule or order of the board shall be posted for public inspection in the main office of the board and a certified copy filed in the office of the Secretary of the Board and Secretary of State of Oklahoma.

"An order applying only to a person or persons named therein shall be served on the person or persons affected. * * *

"The posting in the main office of the board of any rule and order not herein required to be served, and such filing in the office of the Secretary of the board, shall constitute due and sufficient notice to all persons affected by such rule or order. * * * The provisions of this Section, as to service of orders, shall not apply to orders fixing prices, as to which provisions are made in section 12 of this act."

The record in this case discloses that the rule of October 6, 1938, whereby the State Barber Board issued an order providing for a minimum price of 20 cents for shaves and 40 cents for hair cuts in the city of Stillwater was

426

properly posted in the office of the board and filed in the office of the Secretary of State. We are of the opinion from reading this act as a whole, this was the only notice necessary to be filed by the board. The record also discloses that this defendant had, at another and different time prior thereto, been prosecuted for a violation of this same law in Cushing, Payne county, Okla.

It is next contended that the court erred in the instructions given to the jury in this case. This error is based upon the contention made by counsel in the objections heretofore considered. If the defendant was in error in those contentions, as we have held, then the instructions of the court were in proper form and properly gave the law to the jury. For this reason, it is unnecessary to further consider the instructions given by the court. They fully covered every phase of the law and the rights of the defendant were properly safeguarded.

Finding no error in the record, we are of the opinion that the judgment of the county court of Payne county should be affirmed, and it is so ordered.

DOYLE, P. J., and JONES, J., concur.